<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HOWMEDICA OSTEONICS CORP.**, a New Jersey Corporation and subsidiary of **STRYKER CORPORATION**, <br><br>　　　　　**Plaintiff,** <br><br>v. <br><br>**BRETT SARKISIAN; KEEGAN FREEMAN; MICHAEL NORDYKE; TAYLOR SMITH; BRYAN WYATT; DEPUY ORTHOPAEDICS, INC.; AND GOLDEN STATE ORTHOPAEDICS, INC.,** <br><br>　　　　　**Defendants.** | Civil Action No.: 14-3449 (CCC) <br><br><br><br><u>OPINION</u> |

**Falk, U.S.M.J.**

　　　This case centers on Plaintiff Howmedica's allegation that five former California employees of Howmedica, or its non-party parent Stryker Corporation, breached restrictive covenants in their employment agreements by soliciting clients in California for the benefit of competitors Depuy Orthopaedics, Inc. and Golden State Orthopaedics, Inc.

　　　Before the Court are three motions seeking dismissal for, *inter alia*, lack of personal jurisdiction, pursuant to Rule 12(b)(2), improper venue, pursuant to Rule 12(b)(3), and for failure

to state a claim, pursuant to Rule 12(b)(6). [ECF Nos. 52, 54-55.][1]  Alternatively, Defendants all request a transfer of this case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of California.  [Id.]  Plaintiff opposes the motions, which were referred to the Undersigned.  Having carefully considered the papers submitted, no oral argument is necessary.  Fed. R. Civ. P. 78(b).  For the reasons stated below, the motions to transfer are **GRANTED**, and the case is transferred to the United States District Court for the Northern District of California.[2]

## BACKGROUND

Plaintiff Howmedica Osteonics Corporation is a New Jersey based, wholly-owned subsidiary of non-party Stryker Corporation, which is located in Michigan. (Amended Compl. ("AC"), ¶ 13; Declaration of Jed Marcus, Esq. ("Marcus Decl.") ¶ 6.)[3]  Howmedica is in the business of designing, manufacturing, and marketing orthopaedic implants used in reconstructing

---

[1]  Defendant DePuy moved pursuant to Rule 12(b)(6) and for failure to join necessary parties pursuant to Rules 12(b)(7) and 19.  It did not address jurisdiction or venue.

[2] The Undersigned does not need to conclusively resolve Defendants' Rule 12 arguments, which if necessary would be accomplished by way of a Report and Recommendation.  See 28 U.S.C. § 636(b)(1)(B).  Because a request to transfer pursuant to 28 U.S.C. § 1404(a) is a non-dispositive motion, see, e.g., Siemens Financial Servs., Inc. v. Open Advantage MRI II, 2008 WL 564707, at *2 (D.N.J. Feb. 29, 2008), the Court issues an Opinion subject to the clearly erroneous standard of review.

[3] The Amended Complaint and employment agreements, which are important to the issues on this motion, are confusing as to the identity of the Individuals' employers and contracting parties.  Howmedica is the only named Plaintiff, and the caption describes it as subsidiary of Stryker Corporation.  However, throughout the Amended Complaint, Plaintiff Howmedica refers to itself as "Stryker."  Although obviously related, Howmedica and Stryker are different corporations with different corporate citizenship.  Howmedica is a New Jersey corporation located in Mahwah, New Jersey.  (AC ¶ 13.)  Stryker Corporation a separate corporation and legal entity based in Michigan.  (Compl., p. 1.)

various joints, including hip, knee and shoulder implants. (AC ¶ 24.) Howmedica's business in this industry is focused on two primary areas. One area is referred to as "Recon," which involves reconstructive total joint repair such as hip replacement surgery. (AC ¶¶ 1, 4.) The second area is referred to as "Trauma," which involves emergent traumatic fracture repair surgeries. (AC ¶¶ 1, 4.) Both areas are generally treated by the same orthopaedic surgeons, although product-makers sometimes treat the areas as different product lines. (Id.)

Defendant DePuy Orthopaedics, Inc. ("DePuy") is an Indiana Corporation with its principal place of business in Warsaw, Indiana. (AC ¶ 19.) Defendant Golden State Orthopaedics, Inc. ("GSO") is California corporation with its principal place of business in San Francisco, California. (AC ¶ 20.) DePuy and GSO are direct competitors of Howmedica /Stryker in the Recon and Tramua fields of orthopaedic sales. (AC ¶ 64.)

Defendants Brett Sarkisian, Keegan Freeman, Michael Nordyke, Taylor Smith, and Bryan Watt were apparently former Howmedica or Stryker sales employees (collectively, the "California Individuals"). All five individuals are citizens of, and reside in, California. (AC ¶¶ 14-18.) Sarkisian, Freeman, Smith, and Watt were employed as Recon Sales Representatives; Nordyke was a Trauma Sales Representative. All five individuals executed employment agreements with Stryker Corporation (a non-party) or Howmedica.[4] The employment agreements

---

[4] Sarkisian and Wyatt signed employment agreements with Plaintiff Howmedica. (AC ¶¶ 30-31.) However, these agreements are titled "Stryker Orthopaedics" employee agreement at the top. In the top right corner of the Howmedica agreements, the word "California" appears in bold capital letters. Although the agreements purport to be between Howmedica and the individual employees, Howmedica is referred to as "Styrker" in the body of the agreements. Nordyke, Smith and Freeman signed employment agreements with Stryker Corporation, not Howmedica. (Nordyke Decl., ¶ 26; Freeman Decl., ¶ 19; Smith Decl., ¶ 2.) These individuals contend, *inter alia*, that Howmedica lacks standing to sue them for breach of the agreements. Howmedica counters that it has standing because the employment agreements were entered into with Stryker

contain confidentiality and non-solicitation provisions. (AC ¶¶ 45, 48.) The agreements also contain forum selection clauses. (AC ¶ 22.) Although discussed more herein, the forum selection provisions in the agreements signed by Sarkisian, Freeman, Smith, and Watt purport to set New Jersey as the forum for any dispute arising out of the agreements. (AC ¶ 22.) However, Nordyke's agreement, which is also described as a "California" agreement, designates Michigan—not New Jersey—as the appropriate forum. (AC ¶¶ 22-23; Declaration of Michael Nordyke ("Nordyke Decl.") ¶ 26; Exhibit 3, ¶ 8.2.)

In April 2014, Howmedica alleges that, without notice, the California Individuals simultaneously resigned and took employment with "DePuy and/or GSO," its direct competitors. (AC ¶¶ 4, 55.) Howmedica claims that Defendants then went on to breach their employment agreements and duty of loyalty to Stryker, and that "DePuy . . . engaged in tortious conduct in connection with the misdeeds" of the California Individuals. (AC ¶ 5.) Specifically, Howmedica contends that, prior to resigning, the California Individuals, in concert with and "at GSO and DePuy's request," solicited numerous California-based Stryker customers in favor of DePuy. (AC ¶ 6.) These former Stryker customers are all orthopaedic surgeons who live in California. (Id.) Not surprisingly, Defendants have a different story.

On May 30, 2014, Howmedica filed its original complaint. The operative complaint, Howmedica's Amended Complaint, was filed on October 16, 2014, and contains the following counts: (1) Breach of Contract (against the California Individuals); (2) Breach of Duty of Loyalty (against the California Individuals); (3) Aiding and Abetting Breach of Duty of Loyalty (against

---

and any of its "existing and future subsidiaries" (i.e., Howmedica). (Pl.'s Br. 11.) Regardless of whether the Plaintiff has standing, the unexplained, interchangeable description of the Plaintiff, the employer, and the contracting parties as Howmedica and Stryker is quite confusing.

DePuy and GSO); (4) Tortious Interference with Contract (against DePuy and GSO); (5) Tortious Interference with Prospective Economic Advantage: Stryker's Workforce (against DePuy and GSO); (6) Tortious Interference with Prospective Economic Advantage: Stryker's Customers (against DePuy and GSO); (7) Unfair Competition (against all Defendants); and (8) Corporate Raiding (against DePuy and GSO).

On November 26, 2014, all Defendants moved to dismiss the case for a multitude of reasons, including lack of personal jurisdiction (Rule 12(b)(2)), improper venue (Rule 12(b)(3)), and failure to state a claim (Rule 12(b)(6)). [ECF Nos. 52, 54, 55.] In addition, all Defendants request transfer of this case to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404.[5] Plaintiff has opposed all three motions separately. Extensive briefing has been submitted, including overlength briefs and sur-replies.[6]

\* \* \*

As is explained in detail below, this is a California-centric dispute that belongs in California. The only conceivable reason this case is in New Jersey is the forum selection

---

[5] On July 7, 2014, GSO filed a related lawsuit in the United States District Court for the Northern District of California against Howmedica, alleging that Howmedica's actions in seeking to prevent the California Individuals from working for GSO violates California law. See Golden State Orthopaedics Inc. v. Howmedica Osteonics Corp., N.D. Cal., 14-3073 (PJH). The Honorable Phyllis J. Hamilton, U.S.D.J. has stayed that case pending the outcome of GSO's motion in this Court. See N.D. Cal., 14-3703, ECF No. 43.

[6] The parties' papers contain fact disputes relating to almost every issue, including the negotiation and entry of the California Individuals' Employment Agreements; who employed the California Individuals and who employs them now; and whether Howmedica is even the party with standing to bring this lawsuit. The legal validity of the employment agreements and the forum selection clauses is also hotly disputed. These disputes are not resolved in this Opinion (nor could they be on the record submitted) because their resolution is unnecessary for the Court to determine that this case belongs in California.

provision contained in some—but not all—of the California Individuals' Employment Agreements. Howmedica has also stretched to argue that GSO—a party with no contract with Plaintiff and virtually no connection at all to this forum— should also be bound by the forum selection agreements in <u>some</u> of the California Individuals' contracts and brought to New Jersey.[7] Similarly, ignoring the forum selection provision in Nordyke's agreement setting venue in Michigan, Plaintiff argues Nordyke too is "closely-related" to the other California Individuals such that he should be bound by the terms of their contracts (the validity of which are genuinely disputed). In other words, Plaintiff would have this entire dispute heard in New Jersey even though GSO has no connection to this forum and even though one of the California Individual Defendants has a forum selection clause setting litigation in the courts of Michigan. Even if it is assumed the employment agreements are valid, the Court would likely recommend dismissal of this matter for both lack of personal jurisdiction and improper venue (as to most, if not all, parties). However, there is no need to do so under the few undisputed facts present here. The fairest, most efficient, and commonsense decision is to transfer this case where it belongs—California.

## **SUMMARY**

Everything about this contentious case is in California—all the parties are there; the causes of action arose there; the evidence is there; the important witnesses are there—including

---

[7] It relies on the "closely-related parties" doctrine, which provides, in some circumstances, that a forum selection clause can be enforced against a non-signatory when the party is so "closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound." <u>D'Elia v. Grand Carribean Co.</u>, 2010 U.S. Dist. LEXIS 32230, at *11 (D.N.J. Mar. 30, 2010) (citing <u>Coastal Steel Corp. v. Tilghman Wheelabrator</u>, 709 F.2d 190, 203 (3d Cir. 1983)).

at least 7 truly essential non-party witnesses not subject to compulsory process in New Jersey (orthopaedic surgeons, whose availability is difficult even where they live).

The California connections to this case are obvious beyond dispute. If this was a standard transfer analysis, it would be simple; transfer to California would be reflexive. But there is an obstacle here, which causes pause but ultimately is not insurmountable. The barrier to automatic transfer is that 4 out of the 7 defendants apparently signed forum selection clauses purportedly consenting to venue in New Jersey. As stated, one of the other defendants signed a forum selection clause naming Michigan as the exclusive forum for any action. The remaining two defendants did not sign any forum selection clause and one argues convincingly that there is no personal jurisdiction over it in New Jersey. The obstacle is a line of precedent reinforced by a recent Supreme Court case that instructs that in a transfer analysis valid forum selection clauses are entitled to special considerations and are generally to be enforced. The Court fully acknowledges and respects that precedent. However, enforcing the purported (New Jersey) forum selection clauses (whose validity is vigorously disputed) doesn't make sense and would lead to palpable inconvenience, ineconomy, and injustice that refutes the intent of the transfer statute.

This is because enforcing the few New Jersey clauses would likely divide the case (which is really one case and must be tried as one case) into three separate cases, in three different venues—two on the opposite coasts of the Country and one in the middle. That makes no sense for anyone.

Conversely trying to squeeze the whole case in New Jersey is untenable. It would require the Court to disregard the law of jurisdiction and venue and then make a series of factual findings

where there is no obvious basis to do so.  For example, keeping the case in New Jersey would require the Court to disregard the Michigan forum selection clause for no reason other than Plaintiff wants it that way.  Also, it would require finding venue was proper in New Jersey in the first place, which is disputed and highly questionable.  It would require finding that the New Jersey forum selection clauses are valid, though Defendants claim they were procured by misrepresentations and are unenforceable contacts of adhesion.  It would require finding that Plaintiff has standing to enforce the forum selection clauses even though it is not clear who the clauses were entered into with.  It would require finding that there is personal jurisdiction in New Jersey over certain Defendants when it seems clear that there is not.  It would require finding the "closely related" doctrine somehow overrides the jurisdiction and venue problems.

     Deciding this multitude of fact disputes would likely require jurisdictional and validity discovery and likely necessitate hearings with the Court making credibility findings.  And all of this before even talking about the merits.  And after all that, there are still the California surgeons with <u>no</u> connection to New Jersey who may be the most important fact witnesses in the case.  Respectfully, it is this Court's opinion that the Supreme Court's endorsement of the enforceability of valid forum selection clauses does not require this convoluted exercise in this particular case.

     Yes, forum selection clauses are entitled to deference.  But they're not automatic and absolute.  The Court concludes that circumstances here constitute the type of exceptional circumstances in which transfer may be appropriate, even assuming a valid forum selection clause.  Justice and reason dictate that this case proceed in California, and therefore, for the reasons set forth below, Defendants' alternative motions to transfer will be granted.

**DISCUSSION**

A.  **Transfer Pursuant to Section 1404(a)**

28 U.S.C. § 1404(a) provides federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "[f]or the convenience of parties and witnesses," or in "the interests of justice." 28 U.S.C. §1404(a). The purpose of transfer is to "prevent the waste of 'time, energy, and money' and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)). The decision to transfer is a highly discretionary one. See, e.g., Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007); Superior Oil v. Andrus, 656 F.2d 33, 42 (3d Cir. 1981) ("[A] district court has broad discretionary power under [§ 1404(a)] to transfer any civil action to any other district where it might have been brought.").[8]

"There is no definitive formula or list of the factors to consider when deciding a motion to transfer." Landmark Fin. Corp. v. Fresenus Med. Care Holdings, Inc., 2010 WL 715454, at *2 (D.N.J. Mar. 1, 2010). However, the Third Circuit has articulated certain "public" and "private" interests implicated by § 1404(a). The private interests include: (1) the plaintiff's preferred forum as expressed by the original forum choice; (2) the defendant's preference (3) where the claim arose; (4) the convenience of the parties; (5) the convenience and availability of

---

[8] The transfer statute limits the ability to transfer to a district or division where the case "might have been brought." 28 U.S.C. § 1404(a). Another district is proper if that district would be a proper venue for the action and that forum is capable of asserting subject matter jurisdiction over the claim and personal jurisdiction over the defendants. See Yang v. Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006). There is no dispute that this case could have been brought in the Northern District of California.

9

witnesses; and 6) the location of books and records.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  The public interests include: (1) enforceability of the Court's judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the level of congestion in the respective forums, (4) the local interest in deciding local controversies at home; (5) the public policies of the forum; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  Id.

**B.    Some clear thinking on the Supreme Court's Opinion in *Atlantic Marine Constr. Co. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568 (2013)**

The parties' briefs debate the impact of the Supreme Court's Opinion in Atlantic Marine on this case.  Therefore, it is appropriate to discuss that decision.

In Atlantic Marine, the plaintiff was a Virginia-based construction contractor that entered into a subcontract with a Texas corporation for work on a project.  Id.  The parties' contract contained a forum selection clause stating that all disputes between the parties "shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia . . . ."  Id. at 575.  The parties had a dispute over payment, and the Texas subcontractor commenced an action in the United States District Court for the Western District of Texas.  Id.  In response, the Virginia contractor filed a motion to dismiss the suit, arguing that the forum selection clause placing litigation in Virginia rendered venue in the Western District of Texas "wrong" under 28 U.S.C. § 1406 or "improper" under Federal Rule of Civil Procedure 12(b)(3).  In the alternative, the Virginia contractor moved to transfer to the Eastern District of Virginia.  Id.  After a series of lower court decisions, the issue presented to the Supreme Court was "the procedure that is available to a defendant in a civil case who seeks to

enforce a forum selection clause." Id. at 575.

The Supreme Court held that a determination of whether venue is "wrong" or "improper" is determined solely by reference to the federal venue statute—28 U.S.C. § 1391—and "whether the parties entered into a contract containing a forum-selection provision has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." Id. The Supreme Court further held that the proper way for a defendant to enforce a forum selection clause is not through a motion to dismiss for improper venue, but rather through a motion to transfer pursuant to 28 U.S.C. § 1404(a). Id. Finally, the Supreme Court stated that if is a valid forum selection clause, a district court should ordinarily transfer a case to the forum stated in the clause absent "extraordinary circumstances unrelated to the convenience of the parties." Id. at 581.

In sum, Atlantic Marine stands for the following:

- \*  Whether venue is "proper" is determined solely by referring to 28 U.S.C. § 1391, id. at 577;

- \*  When the parties' contract contains a valid forum selection provision, and a lawsuit is filed in a venue other than the forum in the parties' contract, a defendant should respond with a motion to transfer pursuant to 28 U.S.C. § 1404(a), id, at 579;

- \*  A valid forum selection clause is an important consideration in a Section 1404(a) analysis. A case should usually be transferred to the district specified in the clause, absent unusual circumstances, id. at 581; and

- \*  When there is a valid forum selection clause, and a case is filed in a district other than the one specified in the clause, the court's Section 1404(a) transfer considerations change in three ways: (1) the plaintiff's choice of forum becomes immaterial; (2) the parties' private interests—traditional transfer considerations—should not be considered, and should be deemed to weigh entirely in favor the selected forum; and (3) the original venue's choice of law rules do not apply, id, at 581-82.

This case is not Atlantic Marine. Indeed, there are many distinctions between Atlantic

11

Marine and what is presented here, including:

* Defendants are not seeking to enforce a forum selection provision. Rather, the Plaintiff—Howmedica—filed suit in this District suggesting that some of the purported forum selection clauses made jurisdiction and venue proper here, arguably contrary to Atlantic Marine. (AC ¶ 22.)

* Atlantic Marine was based on the presumption that the forum selection clause was valid, id. at 581 n.5. Here, the validity of the forum selection provisions are contested.[9]

* Unlike Atlantic Marine, there are extensive disputes about the propriety of venue and jurisdiction, especially as to Defendant GSO, which has no contractual relationship with Plaintiff and is being sued here based on a strained theory of "closely-related" parties.

*     *     *

Atlantic Marine does not compel a specific result in this case. It simply requires that, if valid, and venue in the chosen forum is independently correct, then the forum selection clause be given due weight in the transfer analysis. The case does not overrule case law that recognizes that a district court has wide discretion to transfer venue, including a transfer contrary to a forum selection provision. See, e.g., Siemens Financial Servs., Inc. v. Open Advantage MRI II, 2008 WL 564707, at *2 (D.N.J. Feb. 29, 2008) ("The existence of a private agreement does not prevent the court from ordering transfer under section 1404(a)." (quoting Plum Tree, Inc.v. Stockment, 488 F.2d 754, 758 (3d Cir. 1973))); De Lage Landen Fin. Servs. v. Cardservice Int'l Inc., 2000 U.S. Dist LEXIS 15505, at *6 & n.3 (E.D. Pa. Oct. 26, 2009) ("Neither Plaintiff's choice of forum nor a forum selection clause is dispositive, however, or there would be no need to consider any other factor and § 1404(a) would be meaningless."). Nor does it overrule case

---

[9] Defendants do not simply say that the forum selection clauses are invalid. Some submit sworn declarations with specific facts supporting their disputed claim that the clauses were the result of misrepresentations and are classic contacts of adhesion.

law Defendants rely on in support of transfer, like Ikon Office Solutions, Inc. v. Rezente, 2010 U.S. Dist. LEXIS 10096 (E.D. Pa. Feb. 3, 2010).

In Ikon, the employer was an Ohio corporation with its principal place of business in Pennsylvania. Id. at *2. It sought to enforce restrictive covenants against two former employees who lived and worked in California. Id, at *2-3. The agreements the employer sought to enforce contained forum selection clauses, which authorized the employer to bring suit in the Eastern District of Pennsylvania, which it did. Id. Defendants moved to dismiss for lack of personal jurisdiction, or in the alternative to transfer venue. Id. The court did not reach the issue of personal jurisdiction, finding instead venue was improper in Pennsylvania and that venue could not be made proper simply by inserting a forum selection clause in a contract making it so. Id. at *4-5. Because venue was improper in Pennsylvania., the Court transferred the case to the Eastern District of California, despite the forum selection clause.

Ikon is on point. And its logic survives Atlantic Marine and supports transfer of this case to California. Like Ikon, this case is, if anything, is the "unusual" case identified in Atlantic Marine that should be transferred despite a purported forum selection clause.

**C.     Section 1404(a) Transfer Appropriate in this Case**

This case is so California based that a traditional factor by factor transfer analysis is unnecessary. The only New Jersey connection is that Plaintiff (which may not even be the real party in interest) is located here and some of the California Individuals have New Jersey forum selection clauses whose validity is disputed. Everything else is in California. Still, the Court will briefly address some of the Section 1404 transfer factors.

### 1. Private Factors

### (i) Plaintiff's Choice of Forum

A plaintiff's initial choice of venue is entitled to some consideration. Shutte v. Armco Stell Co., 431 F.2d 22, 24 (3d Cir. 1970). This is particularly true when the plaintiff selects its home forum. Sandvik, Inc. v. Continental Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1987). Here, it is not clear that New Jersey is really the true plaintiff's home forum. Indeed, the forum selection clauses mostly refer to Stryker Corporation from Michigan. The problems with the forum selection clauses has been discussed herein and will be repeated below. Suffice it to say, Plaintiff's choice of forum is entitled to no deference on the facts presented.

**First**, there are serious questions regarding the enforceability of the clauses. The California Individuals claim the clauses were procured through misrepresentations and are unconscionable and invalid because they are adhesion contracts that were presented by an employer to an employee on a "take-it-or-leave it basis." [California Defendants' Brief at 25-26; ECF No. 52-2.]

**Second**, Nordyke's Michigan forum selection provision raises a conundrum. Why should the Court enforce the New Jersey clauses but ignore Nordyke's forum selection provision selecting Michigan? Plaintiff claims that the "closely-related" doctrine should pull Nordyke into New Jersey—but why not the other individuals to Michigan? Assuming the clauses were deemed valid, Plaintiff offers no persuasive reason why the Court should favor the New Jersey provision over the Michigan provision. Moreover, if the forum selection clauses are exclusive as

Plaintiff claims, there is no avoiding dismissal of Nordyke from this action.[10]

**Three**, were it necessary to decide (it is not), the Court would find that Plaintiff lacks personal jurisdiction over GSO. GSO is a California company that does business almost exclusively in California. (Declaration of Bradford LaPoint ("LaPoint Decl."), ¶ 2.) GSO has never done business in New Jersey, does not advertise in New Jersey, does not employ the California Individuals, and has no offices or assets in New Jersey. (LaPoint Decl., ¶ 4.)

Plaintiff does not seem to dispute any of these facts, but nevertheless claims that GSO can be sued in New Jersey based on the forum selection clauses in four of the individual defendants' employment agreements. It strains reason to bind a company to the contractual forum selection clauses of individuals that they do not even employ. Moreover, reliance on the forum selection agreements to establish a basis for suit over GSO in New Jersey likely runs afoul of <u>Atlantic Marine</u>. GSO does not belong in New Jersey and it is not a close call. The Court could easily issue a Report & Recommendation to this effect if necessary. However, for present purposes, the Court simply notes that, as to GSO, there is <u>no</u> <u>connection</u> to Plaintiff's choice of forum and its claims against that company.[11]

---

[10] As discussed previously, the Michigan provision raises questions about who the true plaintiff in interest is. Nordyke's agreement sets Michigan as the forum, presumably because Stryker is a Michigan-based company. Howmedica also refers to itself interchangeably as "Stryker" throughout the Amended Complaint. The pleading strategy, whether intentional or not, underscores that it is not clear that Plaintiff has truly selected its home forum.

[11] If the Court did not transfer the case, it would be recommended that Plaintiff's Complaint against GSO be dismissed for lack of personal jurisdiction. That would effectively end the proceedings in this Court. GSO is a necessary and indispensable party to this action, which cannot proceed in New Jersey without it. Plaintiff's Complaint alleges a conspiracy between all defendants, which requires that all of the supposed participants be present. It also alleges that GSO is the corporate Defendant that (directly or indirectly) employs the California-based Individual Defendants. Finally, Plaintiff effectively <u>conceded</u> that GSO is a necessary

**(ii)    Where the Claim Arose**

"As a general rule, the preferred forum is that which is the center of gravity of the accused activity."  NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp. 2d 317, 321 (D.N.J. 1998).

Here, nearly all of the relevant facts point to California.  The terms of the agreements were discussed in California; the agreements were executed in California; the Individuals reside in California and were hired to perform as sales associates in California; the alleged contractual breaches occurred in California; the clients allegedly stolen are California surgeons; and the restriction on employment impacts California citizens attempting to work in California.  Almost nothing related to the claim is connected to New Jersey.

**(iii)    Convenience of the Witnesses & Compulsory Process**

Convenience of witnesses and access to sources of proof are important considerations in a Section 1404(a) analysis.  See Teleconference Sys. v. Proctor & Gamble Pharm., Inc., 676 F. Supp. 2d 321, 331 (D. Del. 2009).  In deciding a motion to transfer, courts often distinguish between party and non-party witnesses.  See Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F. Supp. 324, 329 (D.N.J. 1995) (citations omitted).  Party witnesses carry less weight because they are presumed as willing to testify in either forum, even if it may be inconvenient.  See Liggett Group Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, 534

---

party to this case when it moved to amend its Complaint to add them to the litigation in July of 2014.  See Plaintiff's Br. in Support of Mot. to Amend; ECF No. 13-3 at p.3 ("[Howmedica's] proposed Amended Complaint . . . seeks to add as an additional defendant Golden State . . . a necessary party to this action.").  Therefore, even if the Court were to find jurisdiction and venue proper as to all other defendants, under Rules 12(b)(7) and 19, this entire case would be dismissed.  <u>In effect, this means that transfer of this case to California is actually to Plaintiff's benefit,</u> as it will save it the inconvenience (and filing fee) of re-filing this action in California where it belongs.

n.19 (D.N.J. 2000). Non-party witnesses, on the other hand, may be compelled to attend only by the subpoena power of federal courts. See Fed. R. Civ. P. 45(b)(2) (limiting the federal subpoena power to within 100 miles of the courthouse). Compulsory process over non-party witnesses has been referred to as the single most important factor in a 1404(a) analysis. See Teleconference Sys., 676 F. Supp. 2d at 333 (citing In re Genentech. Inc., 566 F.3d 1338 (Fed. Cir. 2009)); In re Consolidated Parlodel Litig., 22 F. Supp. 2d 320, 324 (D.N.J. 1998). A forum's inability to reach non-party witnesses outside of this radius is therefore an important factor weighing in favor of transfer. See LG Elecs., Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 590-591 (D.N.J. 2001).

      Defendants have demonstrated that California is clearly the more convenient forum. Six of seven named defendants are located in California, including all of the individuals. Moreover, Defendants explain that nearly all the witnesses—both party and non-party—reside in California. Specifically, Defendants identify four former Howmedica employees who all reside in California as necessary witnesses in the case.[12] More important, Defendants explain that **7 to 10** non-party surgeons will be necessary witnesses, all of whom live in California and none of whom are subject to jurisdiction in New Jersey. There is also an overriding public interest in minimizing the interruption to the schedules of non-party surgeons in California. In contrast, Plaintiff does not identify a single witness in New Jersey with information relevant to this case. The ability to compel the attendance of witnesses in California weighs strongly in favor of transfer. The potential inability of this Court to compel the attendance of these California

---

[12] These witnesses are identified as: Darryl Sonnesnstein, Bijan Himayounfar, David Bowen, Craig Pritsky, and Michael McMillian. (California Individuals' Br. at 33-34.)

witnesses is a factor that weighs <u>heavily</u> in favor of transfer.

### **Public Factors**

The public factors also weigh in favor of transfer.  California has a strong public interest in this case.  The dispute essentially involves the rights of California citizens ability to work in California and decisions made by orthopaedic surgeons in California.  See, e,g., <u>Delta Air Lines, Inc. v. Chimet</u>, 619 F.3d 288, 300 (3d Cir. 2010) ("In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.").  New Jersey's interest in this dispute is a creature of contract and does not involve any New Jersey citizens.

Furthermore, jury duty should not be imposed on citizens of New Jersey absent an identified public interest in this forum.  See <u>Ferens v. John Deere Co.</u>, 494 U.S. 516, 529-30 (1990) ("Jury duty is a burden that ought not to be imposed upon the people of the community with no connection to the litigation.").  Finally, because most of the parties, witnesses and evidence to this action are located in California, it would be more cost effective and economically judicious to proceed with the case there.

California has an overwhelming connection to this case.  So much so that this case is the "unusual" one that would require transfer even if there were valid forum selection clause. This matter should be litigated in forum where the unlawful acts allegedly occurred and where all Defendants can be properly joined in one single suit.  That is *not* New Jersey.  It *is* California.

## CONCLUSION

For the reasons stated above, Defendants' motions to transfer venue are **GRANTED**. The case is hereby transferred to the United States District Court for the Northern District of California.

s/Mark Falk
**MARK FALK**
**United States Magistrate Judge**

**DATED: April 20, 2015**